In the Missouri Court of Appeals
 Eastern District
 DIVISION ONE

VICKI J. SMITH, ) No. ED108399
 )
 Appellant, ) Appeal from the Circuit Court
 ) of Lincoln County
 ) 14L6-CC00106
 vs. ) 05L6-FC00236-02
 )
 )
DEAN A. SMITH, ) Honorable Thomas J. Frawley
 )
 Respondent. ) Filed: March 30, 2021

 Vicki J. Smith (“Wife”) appeals the trial court’s August 26, 2019 judgment (“August

2019 judgment”) entered in favor of Dean A. Smith (“Husband”) on Husband’s claim for

equitable relief. The August 2019 judgment relieved Husband from his obligation under the

parties’ May 2007 dissolution judgment to pay any monies owed on a Bank of America credit

card in Husband’s individual name; entered judgment in favor of Husband and against Wife in

the total amount of $50,660.79; and ordered Wife to pay Husband $15,000.00 in attorney’s fees.

Because Husband’s claim for equitable relief was barred by the doctrine of res judicata, we

reverse the August 2019 judgment and remand to the trial court for dismissal of Husband’s

claim. 1

1
 We deny Husband’s motion for attorney’s fees on appeal, which was taken with the case.
 I. BACKGROUND
 This case involves whether, inter alia, Husband or Wife is obligated to pay monies owed

on a Bank of America credit card in Husband’s individual name. As explained below, two trial

judges in the Circuit Court of Lincoln County made inconsistent rulings as to this issue; the

Honorable Dan Dildine (“Judge Dildine”) found Husband has an obligation to pay monies owed

on the Bank of America credit card, whereas the Honorable Thomas J. Frawley (“Judge

Frawley” or “the trial court”) found Wife has an obligation to pay such monies owed.

 The parties were married on July 31, 1982, and three children were born of the marriage.

The parties then separated on or about February 1, 2005. On October 14, 2005, Wife filed a

petition for dissolution of marriage. The case subsequently involved a lengthy procedural

posture consisting of, (A) October 2005 to May 2007 dissolution proceedings before Judge

Dildine; (B) proceedings on Husband’s December 2009 motion to modify, motion for contempt,

and petition for unjust enrichment before Judge Dildine; and (C) proceedings on Husband’s

August 2014 claim for equitable relief before Judge Frawley leading up to the instant appeal.

A. Relevant Portions of the October 2005 to May 2007 Dissolution Proceedings Before
 Judge Dildine

 1. Initial Facts Regarding the Credit Card at Issue in this Appeal

 During the parties’ marriage, Husband opened an MBNA credit card account in his

individual name. On separate dates in 2005, Wife and Husband each filed a statement of

property listing the credit card as having a $0 balance. Neither party amended his or her

statement of property at any time during the dissolution proceedings.

 At some point during the dissolution proceedings, the MBNA credit card account was

taken over by Bank of America (“the Bank of America credit card”). Although the Bank of

America credit card was in Husband’s individual name only, Wife was authorized to write

checks on the account. On January 1, 2007, the Bank of America credit card had a $0 balance.
 2
On January 25 and April 24, 2007, and without Husband’s knowledge, Wife wrote four checks

on the Bank of America credit card account totaling approximately $30,000.00. 2

 2. Judge Dildine’s Orders and Husband’s Failure to Comply with Such Orders
 and Discovery

 On March 10, 2006, Judge Dildine entered a pendente lite (“PDL”) order requiring

Husband to pay Wife the sum of $771.00 per month beginning on April 10, 2006 for child

support and the sum of $5,000.00 per month in temporary maintenance beginning April 10,

2006. Husband failed to comply with the PDL order. Accordingly, on June 13, 2006, Judge

Dildine entered an order providing for an income withholding to be effective against Husband

for “$5771.00 per month in child support/maintenance, and an additional $2885.50 per month for

2.43 months to defray arrearages.” (emphasis omitted).

 Judge Dildine also entered multiple orders against Husband for failing to comply with

discovery during the pendency of the dissolution proceedings. On September 18, 2006, Judge

Dildine entered an order granting Wife’s motion to compel execution of a release for records.

Then, on January 16, 2007, Judge Dildine entered an order granting Wife’s motion to compel

supplemental responses to five specific requests in Wife’s first request for production of

documents and ordering Husband to supplement such responses on or before February 10, 2007.

Additionally, because Husband failed to comply with the discovery deadline in the January 16,

2007 order, Judge Dildine entered an order on February 20, 2007 granting Wife’s motion for

sanctions and motion to compel further discovery responses, which, inter alia, ordered Husband

to pay Wife $500.00 in attorney’s fees as a sanction.

2
 Wife wrote three checks on the bank of America credit card account on January 25, 2007, (1) a check to herself for
the amount of $19,000.00 with “legal expenses” written in the memo line; (2) a check to her attorney in the amount
of approximately $5,896.00 with “balance due on Jan 07” written in the memo line; and (3) another check to her
attorney in the amount of $3,000.00 with “trust account” written in the memo line. Wife then wrote a final check on
the Bank of America credit card account on April 24, 2007 in the amount of $2,000.00 with “family expenses”
written in the memo line.
 3
 3. The Parties’ Settlement Agreement and Dissolution Judgment

 On March 2, 2007, and after several hours of negotiation with counsel and parties

present, the parties reached a settlement agreement on the record. Among other things, the

parties agreed Husband would be responsible for all credit cards and their balances in his

individual name, and in return, his child support and maintenance arrearages would be

eliminated. A marital settlement agreement (“Marital Settlement Agreement”) reflected terms

reached by the parties on the record in March 2007, and the parties’ signed the Marital

Settlement Agreement on May 15, 2007.

 Judge Dildine signed and entered the dissolution judgment on May 15, 2007, and the

parties’ Marital Settlement Agreement was incorporated into the judgment. The Marital

Settlement Agreement provided Wife would assume and pay all credit cards in her individual

name and would pay her own attorney’s fees and that Husband would assume and pay all credit

cards in his individual name and pay his own attorney’s fees. The Marital Settlement Agreement

also provided, (1) Wife agreed Husband was current in his maintenance and child support

obligations and absolved him of all arrearage and interest as of May 15, 2007; (2) each party

released and discharged the other from any and all claims, demands, causes of action, whether in

law or in equity, that they may have against the other; (3) the parties’ acknowledged there had

been limited discovery undertaken with respect to the case and each party acknowledged and

assumed any loss which may be occasioned due to the fact that complete discovery was not had

by the parties; and (4) said acknowledgment further stated the attorneys had advised their clients

of the risk that exists when complete discovery is not had and the clients thereby stated they

knowingly and willingly assumed the risk and held each attorney harmless with respect to any

cause of action. Finally, the Marital Settlement Agreement provided that commencing June 1,

 4
2007, Husband would pay Wife $1,000.00 per month in maintenance and $3,000.00 per month in

child support for the parties’ two unemancipated children.

B. Relevant Portions of the Proceedings on Husband’s December 2009 Motion to
 Modify, Motion for Contempt, and Petition for Unjust Enrichment Before Judge
 Dildine

 On December 22, 2009, Husband filed a motion to modify, motion for contempt, and

petition for unjust enrichment (“Husband’s 2009 Motion”). Husband’s 2009 Motion requested,

inter alia, the termination or modification of his obligation to pay maintenance; a modification of

his obligation to pay child support; and relief on the approximately $30,000.00 Bank of America

credit card debt resulting from Wife writing checks during the dissolution proceedings on the

basis that Husband was unaware of the debt. With respect to the Bank of America credit card

debt, Husband’s 2009 Motion requested a court order requiring Wife to reimburse Husband for

amounts he paid toward the Bank of America credit card and a claim for unjust enrichment.

Husband also alleged he thought the Bank of America credit card was closed and he became

aware of Wife’s credit card use after the parties’ dissolution judgment was entered.

 On August 2, 2010, Wife filed a Motion to Dismiss Husband’s 2009 Motion (“Wife’s

2010 Motion to Dismiss”). Wife asserted Husband’s 2009 Motion should be dismissed because

Husband had unclean hands in that Husband did not pay Wife maintenance and child support in

accordance with the terms of the dissolution judgment and Husband’s total arrears were over

$30,000.00. Wife also claimed Husband’s 2009 Motion should be dismissed because Husband

released all potential claims, including tort claims, against Wife in the parties’ Marital Settlement

Agreement, and because Husband agreed in the Marital Settlement Agreement to assume any

loss due to his failure to do little, if any, discovery in the dissolution proceedings.

 On September 21, 2010, Judge Dildine conducted a hearing on Wife’s 2010 Motion to

Dismiss. Evidence adduced at the hearing demonstrated Husband’s total arrears for maintenance

 5
and child support were $38,634.82 (consisting of a total maintenance arrearage of $19,393.49

and a total child support arrearage of $19,241.33).

 Husband testified at the evidentiary hearing that he learned there was a debt on the Bank

of America credit card after the parties’ divorce in July 2007, and he changed the address on the

credit card from Wife’s address in Missouri to his address in Florida. Husband also testified he

did not file a motion to set aside the dissolution judgment at the time he learned of the Bank of

America credit card debt in July 2007. Husband claimed he did not file such a motion because

he was on active duty in the military “based out of Tampa, Florida,” and “had multiple

deployments going to Iraq and Afghanistan”; however, the only specific evidence of Husband’s

overseas deployments was that he had an eleven-month deployment in 2005 and a seven-month

deployment in 2006.

 Wife testified at the hearing on her 2010 Motion to Dismiss that although she did not

have any direct negotiations with Husband on the day of the settlement hearing on March 2,

2007 because the attorneys negotiated the settlement, it was her understanding the Bank of

America credit card balance was an exchange of debts for the maintenance and child support

arrears that were owed by Husband, which was part of what factored into her negotiation

position during the settlement process. On cross-examination, Husband’s attorney asked Wife

about all of the checks that were written on the Bank of America credit card account, and she

testified some of the money from the checks went to legal fees and some was used for the

parties’ children. Wife testified she never misrepresented the Bank of America credit card debt

to Husband, Husband never asked her about it, and Husband did not do any discovery during the

dissolution proceedings. Wife also testified she was never served with a motion to set aside the

parties’ dissolution judgment.

 6
 At the conclusion of the evidentiary hearing on Wife’s 2010 Motion to Dismiss, Wife’s

attorney argued Husband’s 2009 Motion should be dismissed on the basis of unclean hands, the

doctrine of release, and because Husband could have filed a motion to set aside the parties’

dissolution judgment within one year of it being entered but Husband never did. With respect to

Wife’s claim asserting Husband had unclean hands, Wife’s attorney argued that, inter alia,

during the dissolution proceedings Husband failed to comply with Judge Dildine’s orders,

including discovery orders.

 On September 21, 2010, Judge Dildine entered a judgment granting Wife’s 2010 Motion

to Dismiss Husband’s 2009 Motion and ordering Husband to pay Wife $2,000.00 in attorney’s

fees (“Judge Dildine’s 2010 judgment”). Judge Dildine’s 2010 judgment did not specify whether

the dismissal of Husband’s 2009 Motion was with or without prejudice.

 Nevertheless, Judge Dildine’s 2010 judgment specifically found the evidence at the

hearing on Wife’s 2010 Motion to Dismiss established that, (1) “[Husband] had failed to abide

by the [c]ourt’s prior orders [in the dissolution judgment] as to child support and as to

maintenance, being in arrears by more than $9,600.00 as to [the parties’ minor daughter], that he

was in arrears more than $9,600.00 as to [the parties’ minor son], and that he was in arrears more

than $19,000.00 as to his maintenance due to [Wife]”; (2) “[Husband] during the time of failing

to abide by the [c]ourt’s orders had the ability to comply . . . and made the decision not to

comply”; (3) “[b]y July of 2007, [Husband] was aware of the balance of [the Bank of America

credit card account] that he had accepted as part of the [M]arital [S]ettlement [A]greement,

exceeding what he expected it to be. However, no action was filed by [Husband] until

[Husband’s 2009 Motion]”; (4) “the parties’ [M]arital [S]ettlement [A]greement . . . included a

release and discharge of any and all claims, demands, causes of actions, etc. that either party had

against the other”; and (5) “[during the dissolution proceedings] [Husband] had done little

 7
discovery, and had avoided full compliance with [Wife’s] discovery requests.” In sum, Judge

Dildine’s 2010 judgment effectively found that Husband has an obligation to pay monies owed

on the Bank of America credit card.

C. Relevant Portions of the Proceedings on Husband’s August 2014 Claim for
 Equitable Relief Before Judge Frawley Leading Up to the Instant Appeal
 On August 22, 2014, Husband filed a petition asserting a claim for equitable relief. In

this claim, Husband alleged that during the dissolution proceedings and without Husband’s

knowledge or authorization, Wife drafted four checks on the Bank of America credit card

totaling approximately $30,000.00. Husband requested a judgment in his favor and against Wife

for all amounts he paid on the Bank of America credit card debt as a result of the four checks

written by Wife, and for an order requiring Wife to pay all remaining sums on the debt for the

four checks, for interest, and for attorney’s fees. Subsequently, Wife filed a motion to dismiss

Husband’s claim for equitable relief on the grounds the claim was barred under the doctrine of

res judicata because “[Husband] has previously litigated his claim regarding these issues against

[Wife] [before Judge Dildine].”

 On October 14, 2014, Husband’s claim for equitable relief was consolidated in a motion

to modify action that was already pending. On November 4, 2014, Husband filed an amended

motion to modify and to abate child support, determine child support arrears, and for equitable

relief which again included counts pertaining to the Bank of America credit card debt.

 There were several hearings held before Judge Frawley regarding Husband’s 2014

pleadings. Initial judgments were entered on October 20, 2016, on February 24, 2017, and on

June 13, 2017; none of these aforementioned judgments made any findings on the Bank of

America credit card debt, and all of the judgments provided the parties’ dissolution judgment

remained in full force and effect on this issue.

 8
 On December 1, 2017, Judge Frawley held a hearing on Husband’s claim for equitable

relief regarding the issue of the Bank of America credit card debt. Husband and Wife both

testified at the hearing. Husband effectively testified that Wife concealed the Bank of America

credit card debt from Husband by failing to mail the Bank of America credit card statements to

Husband during the dissolution proceedings; re-activating the account without Husband’s

knowledge; waiting to change the address on the Bank of America credit card until after the

dissolution judgment was entered; and failing to update her financial disclosures with the court

after she wrote the checks resulting in the Bank of America credit card debt.

 Subsequently, Judge Frawley entered a judgment on June 4, 2018 in favor of Husband on

his claim of equitable relief (“June 2018 judgment”). The trial court’s June 2018 judgment

found that, inter alia, Husband established Wife committed extrinsic fraud with respect to her

alleged actions and inactions concealing the Bank of America credit card debt from Husband.

The trial court also found a hearing should be held to determine Husband’s damages.

 Wife filed a motion to reconsider the trial court’s June 2018 judgment, specifically

alleging Husband’s claim for equitable relief was barred by res judicata and that Husband did not

establish Wife committed extrinsic fraud. Judge Frawley denied Wife’s motion to reconsider

and held a hearing on damages on June 3, 2019.

 Thereafter, on August 26, 2019, Judge Frawley entered the August 2019 judgment Wife

appeals from in the instant case. The trial court’s August 2019 judgment again found in favor of

Husband on his claim for equitable relief, specifically finding Husband established Wife

committed extrinsic fraud in obtaining the parties’ dissolution judgment incorporating the

Marital Settlement Agreement because of her alleged actions and inactions concealing the Bank

of America credit card debt. The trial court also found Husband could obtain relief on the basis

of extrinsic fraud because he showed an absence of fault, neglect, or inattention to the case in

 9
that he repeatedly litigated his claim pertaining to the Bank of America credit card debt

following the May 2007 dissolution judgment, including in Husband’s 2009 Motion before

Judge Dildine and in Husband’s 2014 claim for equitable relief before Judge Frawley.

 The trial court’s August 2019 judgment also relieved Husband from his obligation under

the parties’ May 2007 dissolution judgment to pay any monies owed on the Bank of America

credit card in Husband’s individual name; entered judgment in favor of Husband and against

Wife in the total amount of $50,660.79; and ordered Wife to pay Husband $15,000.00 in

attorney’s fees.

 Wife then filed a motion for a new trial and/or to amend the trial court’s August 2019

judgment, which the trial court granted in part and denied in part. The trial court granted Wife’s

post-trial motion to the extent the court clarified Wife’s responsibility to pay the outstanding

balance of the Bank of America credit card debt to Husband was part of the total amount

awarded to Husband in the August 2019 judgment. The trial court denied Wife’s post-trial

motion to the extent it otherwise requested the August 2019 judgment to be amended and to the

extent it requested a new trial. This appeal followed.

 II. DISCUSSION

 In Wife’s first point on appeal and in sub-part one of Wife’s second point on appeal, she

asserts the trial court’s August 2019 judgment is erroneous because Husband’s claim for

equitable relief was barred by the doctrine of res judicata and the trial court erred in finding

Husband could establish a successful extrinsic fraud claim against Wife. For the reasons

discussed below, we agree. 3 Moreover, because Wife’s arguments are related, we will consider

them together. See, e.g., Walker v. Walker, 280 S.W.3d 634, 636 (Mo. App. W.D. 2009) (“res
3
 Wife raises a total of three points on appeal. Sub-part two of Wife’s second point on appeal and Wife’s third point
on appeal contend the trial court’s August 2019 judgment is erroneous for reasons in addition to those asserted in her
first point on appeal and sub-part one of her second point on appeal (“Wife’s additional arguments”); however,
because Wife’s first point on appeal and sub-part one of her second point on appeal are dispositive, we do not reach
Wife’s additional arguments.
 10
judicata . . . [is] inapplicable to bar a claim to set aside a judgment obtained by extrinsic fraud”);

Vinson v. Vinson, 725 S.W.2d 121, 124 (Mo. App. E.D. 1987) (“[r]es judicata notwithstanding, a

prior judgment can be set aside if it can be shown it was obtained by extrinsic fraud”).

A. Standard of Review

 Our review of a judgment in a court-tried case is governed by Murphy v. Carron, 536

S.W.2d 30, 32 (Mo. banc 1976). Williams v. Zellers, 611 S.W.3d 357, 364 (Mo. App. E.D.

2020). Accordingly, our Court will affirm the trial court’s judgment unless it is not supported by

substantial evidence, it is against the weight of the evidence, it erroneously declares the law, or it

erroneously applies the law. Id.

B. Relevant Law

 “Res judicata, also known as claim preclusion, bars the reassertion of a claim or cause of

action that has been previously adjudicated in a proceeding between the same parties or those in

privity with them.” Boehlein v. Crawford, 605 S.W.3d 135, 139 (Mo. App. E.D. 2020); see also

Dunn v. Board of Curators of University of Missouri, 413 S.W.3d 375, 377 (Mo. App. E.D.

2013) (“[r]es judicata is a common law doctrine that precludes parties from contesting matters

they already had a full and fair opportunity to litigate”) (citing U.S. Fidelity & Guar. Co. v.

Commercial Union Ins. Co., 943 S.W.2d 640, 641 (Mo. banc 1997)). The doctrine of res

judicata applies “not only to claims and issues upon which the court was required by the

pleadings and proof to form an opinion and pronounce judgment, but to every claim properly

belonging to the subject matter of the litigation and which the parties, exercising reasonable

diligence, might have brought forward at the time.” Boehlein, 605 S.W.3d at 139 (citing King

Gen. Contractors, Inc. v. Reorganized Church of Jesus Christ of Latter Day Saints, 821 S.W.2d

495, 501 (Mo. banc 1991)); see also Xiaoyan Gu v. Da Hua Hu, 447 S.W.3d 680, 687 (Mo. App.

E.D. 2014) (similarly providing). “The purpose of this rule is to protect individuals from the

 11
burden of litigating multiple lawsuits, to promote judicial economy, and to minimize the

possibility of inconsistent decisions.” Xiaoyan Gu, 447 S.W.3d at 687.

 “[R]es judicata applies only where a prior determination has been made on the merits[.]”

Boehlein, 605 S.W.3d at 141 (citing Denny v. Mathieu, 452 S.W.2d 114, 118-19 (Mo. banc

1970)). A trial court’s dismissal without prejudice may be considered a determination on the

merits as to issues that are litigated by the parties and decided by the court. Woods v. Mehlville

Chrysler-Plymouth, 198 S.W.3d 165, 170 (Mo. App. E.D. 2006) (citing Sexton v. Jenkins &

Associates, Inc., 152 S.W.3d 270, 273 (Mo. banc 2004)). Accordingly, even if a claim was

dismissed without prejudice, the doctrine of res judicata may preclude a party from re-filing a

cause of action in certain situations, including when the party’s new cause of action arises from

the same substantial facts as those previously alleged. See Dunn, 413 S.W.3d at 377 (“regardless

of whether a case was dismissed without prejudice, the doctrine of res judicata precludes a

plaintiff from re-filing a petition that was dismissed for failing to state a claim when it relies on

the same substantial facts as those previously alleged”); see also Phox v. Boes, 481 S.W.3d 920,

921-22 (Mo. App. W.D. 2016) (“[i]n certain situations . . . [ ] dismissals [without prejudice] may

effectively ‘preclude a party from bringing another action for the same cause and may

be res judicata of what the judgment actually decided’”) (quoting Doe v. Visionaire Corp., 13

S.W.3d 674, 676 (Mo. App. E.D. 2000)).

 Nevertheless, res judicata does not apply to a party’s claim to set aside a prior judgment

obtained by extrinsic fraud. Walker, 280 S.W.3d at 636; Vinson, 725 S.W.2d at 124. In other

words, the doctrine of res judicata does not apply to a successful extrinsic fraud claim. See id.

“Extrinsic fraud refers to the fraudulent procurement of a judgment; therefore, the fraud must

relate, not to the propriety of the judgment itself, but to the manner in which the judgment was

obtained.” Vinson, 725 S.W.2d at 124. “The fraud must have been extrinsic or collateral to the

 12
matters which either were or could have been presented and adjudicated in the original

proceeding, and not merely intrinsic in the sense of having pertained to the merits of the cause

upon which the judgment of the court was rendered.” Id. (quotation omitted).

 Although the classification of an alleged fraud as extrinsic or intrinsic can be difficult,

prior Missouri cases provide guidance. Vinson, 725 S.W.2d at 124 (citing Fadler v. Gabbert, 63

S.W.2d 121, 130 (Mo. 1933)); see also T.B. III v. N.B., 478 S.W.3d 504, 509 (Mo. App. E.D.

2015). “Fraud is extrinsic when it induces a party to default or consent to a judgment.” 4 Reimer

v. Hayes, 365 S.W.3d 280, 283 (Mo. App. W.D. 2012) (quotation omitted); see also T.B. III, 478

S.W.3d at 509 (similarly holding). On the other hand, fraud is intrinsic “when a party knowingly

uses perjured testimony or otherwise fabricates evidence.” 5 Reimer, 365 S.W.3d at 283. Fraud

is also intrinsic when one party conceals evidence pertaining to an issue in the case and

underlying judgment. See Sharpe v. Sharpe, 243 S.W.3d 414, 416-17 (Mo. App. E.D. 2007); In

re Marriage of Harrison, 734 S.W.2d 934, 939-40 (Mo. App. S.D. 1987) (citing Daffin v. Daffin,

567 S.W.2d 672, 677-78 (Mo. App. 1978) (superseded by statute on other grounds)).

 A party seeking to establish extrinsic fraud occurred must do so by clear, strong, cogent,

and convincing evidence. Vinson, 725 S.W.2d at 124. Additionally, in order for a party to

obtain relief on the basis of extrinsic fraud, the complaining party must show the absence of

fault, neglect, or inattention to the case. T.B. III, 478 S.W.3d at 509; Vinson, 725 S.W.2d at 124;

see also Keithley v. Shelton, 421 S.W.3d 502, 507 (Mo. App. S.D. 2013) (similarly holding and

4
 Examples of conduct constituting extrinsic fraud include the failure of a guardian ad litem to properly represent his
ward in a dissolution proceeding, a husband’s representations to his wife that his attorney would look out for her
interests and she did not need her own attorney, an action by one party which prevents the other party from
appearing in court, a party’s false promise of a compromise that keeps the opposing party away from court, and
“actions whereby an attorney ‘sells out’ his client’s interest to the other side or connives to bring about his client’s
defeat.” Walker, 280 S.W.3d at 636 n.2 (citing and quoting Vinson, 725 S.W.2d at 124).
5
 Examples of conduct constituting intrinsic fraud include a party making “false averments in a divorce petition,
false statements in an affidavit, and false testimony.” Reimer, 365 S.W.3d at 283 (quotation omitted); see also
Miller v. Hubbert, 804 S.W.2d 819, 821 (Mo. App. E.D. 1991); Vinson, 725 S.W.2d at 124.
 13
also finding “failure of the complaining party to demonstrate [he] was free from fault, neglect, or

inattention is fatal to the action”) (quotation omitted).

C. Analysis

 In this case, Wife argues the trial court’s August 2019 judgment is erroneous because

Husband’s claim for equitable relief was barred by the doctrine of res judicata and the trial court

erred in finding Husband established Wife committed extrinsic fraud in obtaining the parties’

dissolution judgment incorporating the Marital Settlement Agreement. Accordingly, and

consistent with the case law set forth in the preceding subsection of this opinion, we must

consider, (1) the application of the general principles of res judicata to the facts and procedural

posture of this case; and (2) whether the extrinsic fraud exception to the doctrine of res judicata

applies to the facts and procedural posture of this case.

 1. The Application of the General Principles of Res Judicata to the Facts and
 Procedural Posture of this Case

 In this case, Husband filed claims pertaining to the Bank of America credit card debt in

Husband’s 2009 Motion before Judge Dildine and Husband’s 2014 Petition before Judge

Frawley. Both claims requested relief on the approximately $30,000.00 in Bank of America

credit card debt resulting from Wife writing checks during the dissolution proceedings on the

basis that Husband was unaware of the debt at the time the parties’ dissolution judgment and

accompanying Marital Settlement Agreement was entered. As previously stated, Judge Dildine

and Judge Frawley made inconsistent rulings as to whether Husband or Wife has an obligation to

pay monies owed on the Bank of America credit card.

 First, after a hearing, Judge Dildine’s 2010 judgment granted Wife’s 2010 Motion to

Dismiss Husband’s 2009 Motion alleging, inter alia, an unjust enrichment claim based on the

Bank of America credit card debt. At the hearing, Wife and Husband both testified and evidence

was presented. Additionally, Husband’s attorney cross-examined Wife regarding, inter alia, all
 14
of the checks she wrote on the Bank of America credit card account. Finally, Judge Dildine’s

2010 judgment made several findings on the merits of Husband’s 2009 Motion based on the

evidence at the hearing, and the judgment effectively found that Husband has an obligation to

pay monies owed on the Bank of America credit card.

 Subsequently, Judge Frawley’s August 2019 judgment found in favor of Husband on his

2014 claim for equitable relief based on the Bank of America credit card debt. The trial court’s

August 2019 judgment relieved Husband from his obligation under the parties’ May 2007

dissolution judgment to pay any monies owed on the Bank of America credit card in Husband’s

individual name; entered judgment in favor of Husband and against Wife in the total amount of

$50,660.79; and ordered Wife to pay Husband $15,000.00 in attorney’s fees.

 Judge Dildine’s 2010 judgment did not specify whether the dismissal of Husband’s 2009

Motion was with or without prejudice. Accordingly, it is deemed to be without prejudice. See

Missouri Supreme Court Rule 67.03 (2010) (“[a]ny involuntary dismissal shall be without

prejudice unless the court in its order for dismissal shall otherwise specify”); Meissner v.

Schnettgoecke, 427 S.W.3d 864, 866 n.2 (Mo. App. E.D. 2014) (“generally, if a dismissal does

not specifically state it is with prejudice, it is deemed to be without prejudice”).

 Although Judge Dildine’s 2010 judgment is considered to be a dismissal without

prejudice, we find the judgment was a determination on the merits as to Husband’s claim that he

was entitled to relief on the approximately $30,000.00 in Bank of America credit card debt

resulting from Wife writing checks during the dissolution proceedings. This is because Husband

had a full and fair opportunity to litigate his claim, the claim was litigated by the parties, and the

claim was decided by the court. See Woods, 198 S.W.3d at 170 (a trial court’s dismissal without

prejudice may be considered a determination on the merits as to issues that are litigated by the

parties and decided by the court) (citing Sexton, 152 S.W.3d at 273).

 15
 We also find Husband’s new cause of action filed in 2014 before Judge Frawley, under a

new theory of equitable relief, arose from the same substantial facts as those previously alleged

in Husband’s 2009 Motion before Judge Dildine. Specifically, Husband alleged in both his 2009

and 2014 actions that Wife wrote approximately $30,000.00 in checks during the dissolution

proceedings on the Bank of America credit card, and Husband was unaware of the debt at the

time the parties’ dissolution judgment and accompanying Marital Settlement Agreement was

entered.

 In sum, Judge Dildine’s 2010 judgment was a determination on the merits as to

Husband’s claim, Husband had a full and fair opportunity to litigate his claim, and Husband’s

2014 claim arose from the same substantial facts as those previously alleged by Husband in

2009. Under these circumstances, res judicata barred the reassertion of Husband’s claim against

Wife in 2014 so long as Husband did not establish a successful extrinsic fraud claim against

Wife. See id.; Boehlein, 605 S.W.3d at 139, 141; Dunn, 413 S.W.3d at 377; Walker, 280 S.W.3d

at 636; Vinson, 725 S.W.2d at 124; see also State ex rel. City of Blue Springs, Missouri v.

Schieber, 343 S.W.3d 686, 688 (Mo. App. W.D. 2011) (“[s]o long as the underlying facts are the

same, res judicata bars re-litigation of the matter whether upon the same or different cause of

action, claim, demand, ground or theory.” (quotation, internal quotations, and emphasis omitted).

 2. Whether the Extrinsic Fraud Exception to the Doctrine of Res Judicata
 Applies to the Facts and Procedural Posture of this Case

 As previously stated, the doctrine of res judicata does not apply to a successful extrinsic

fraud claim. See Walker, 280 S.W.3d at 636; Vinson, 725 S.W.2d at 124. In this case, the trial

court found in its August 2019 judgment that Husband established a successful extrinsic fraud

claim against Wife because, (1) Husband demonstrated Wife committed extrinsic fraud in

obtaining the parties’ dissolution judgment incorporating the Marital Settlement Agreement

because of her alleged actions and inactions concealing the Bank of America credit card debt;
 16
and (2) Husband showed an absence of fault, neglect, or inattention to the case in that he

repeatedly litigated his claim pertaining to the Bank of America credit card debt following the

May 2007 dissolution judgment, including in Husband’s 2009 Motion before Judge Dildine and

in Husband’s 2014 claim for equitable relief before Judge Frawley.

 We hold the trial court erred in making both of the aforementioned findings. First, fraud

is considered to be intrinsic when one party conceals evidence pertaining to an issue in the case

and part of an underlying judgment. See Sharpe, 243 S.W.3d at 416-17 (holding a husband’s

concealment of property in dissolution action did not constitute extrinsic fraud because property

distribution was an issue in the case); Harrison, 734 S.W.2d at 939-40 (finding a husband’s

concealment of a military pension from the trial court in a dissolution action was intrinsic

because the division of marital property was a part of the dissolution judgment) (citing Daffin,

567 S.W.2d at 677-78) (superseded by statute on other grounds)); see also Walker, 280 S.W.3d

at 639 (finding a wife’s concealment of the fact her husband was not the biological father of the

child in a dissolution action did not constitute extrinsic fraud because such evidence went to the

merits of the dissolution action) (citing Miller v. Hubbert, 804 S.W.2d 819, 820-21 (Mo. App.

E.D. 1991) and K.E.A. v. T.A.A., 765 S.W.2d 389, 390-91 (Mo. App. S.D. 1989)). Here, any

actions and inactions committed by Wife allegedly concealing the Bank of America credit card

debt from Husband in the dissolution action constituted intrinsic fraud because the division of

property and debt was an issue in the dissolution proceedings and was part of the underlying

dissolution judgment incorporating the parties’ Marital Settlement Agreement. See id.

Therefore, the trial court erred in finding Wife committed extrinsic fraud on this basis.

 Second, the trial court erred in finding Husband could obtain relief on an extrinsic fraud

claim because Husband failed to show he was free of fault, neglect, or inattention to the

proceedings. See T.B. III, 478 S.W.3d at 509; Vinson, 725 S.W.2d at 124; see also Keithley, 421

 17
S.W.3d at 507. It is true that, as found by the trial court, Husband repeatedly litigated his claim

pertaining to the Bank of America credit card debt following the dissolution judgment.

Nevertheless, we find Husband’s failure to show an absence of fault, neglect, or inattention

during the pendency of the dissolution proceedings and after the dissolution judgment was

entered is fatal to his claim of extrinsic fraud.

 As found in Judge Dildine’s 2010 judgment, (1) “[Husband] had failed to abide by the

[c]ourt’s prior orders [in the dissolution judgment] as to child support and as to maintenance,

being in arrears by more than $9,600.00 as to [the parties’ minor daughter], that he was in arrears

more than $9,600.00 as to [the parties’ minor son], and that he was in arrears more than

$19,000.00 as to his maintenance due to [Wife]”; (2) “[Husband] during the time of failing to

abide by the [c]ourt’s orders had the ability to comply . . . and made the decision not to comply”;

(3) “[b]y July of 2007, [Husband] was aware of the balance of [the Bank of America credit card

account] that he had accepted as part of the [M]arital [S]ettlement [A]greement, exceeding what

he expected it to be. However, no action was filed by [Husband] until [Husband’s 2009

Motion]”; (4) “the parties’ [M]arital [S]ettlement [A]greement . . . included a release and

discharge of any and all claims, demands, causes of actions, etc. that either party had against the

other”; and (5) “[during the dissolution proceedings] [Husband] had done little discovery, and

had avoided full compliance with [Wife’s] discovery requests.” The aforementioned findings are

supported by the record in this case, including but not limited to, the transcript of the 2010

hearing before Judge Dildine and the dissolution judgment incorporating the Marital Settlement

Agreement.

 Moreover, Husband’s failure to demonstrate he was free from fault, neglect, or

inattention during the pendency of the dissolution proceedings and after the dissolution judgment

was entered is fatal to his extrinsic fraud claim against Wife. See Lin v. Lin, 834 S.W.2d 224,

 18
227-28 (Mo. App. S.D. 1992) (holding a wife’s claim that her husband committed extrinsic fraud

by failing to disclose the value of certain property during the course of negotiating the parties’

property settlement should not be allowed because the wife did not show her absence of fault,

neglect, or inattention to the dissolution judgment incorporating a property settlement where she

knowingly took risks by proceeding without counsel); see also Keithley, 421 S.W.3d at 507;

Sharpe, 243 S.W.3d at 417 (citing In re Marriage of Brown, 703 S.W.2d 59 (Mo. App. E.D.

1985) for the proposition that “[an] equity proceeding cannot be used to obtain another hearing

on matters that were or could have been brought at trial, e.g., when a party later finds further

evidence of truth or falsity or failed to litigate such matters in the original case”).

 In sum, the extrinsic fraud exception to the doctrine of res judicata does not apply to the

facts and procedural posture of this case.

 3. Conclusion as to Wife’s First Point on Appeal and Sub-Part One of
 Wife’s Second Point on Appeal

 Based on the foregoing, the trial court’s August 2019 judgment is erroneous because

Husband’s claim for equitable relief was barred by the doctrine of res judicata. Accordingly, we

reverse the trial court’s August 2019 judgment which relieved Husband from his obligation

under the parties’ May 2007 dissolution judgment to pay the outstanding balance of a Bank of

America credit card in Husband’s individual name; entered judgment in favor of Husband and

against Wife in the total amount of $50,660.79; and ordered Wife to pay Husband $15,000.00 in

attorney’s fees. See Johnson Controls, Inc. v. Trimmer, 466 S.W.3d 585, 587, 595-596 (Mo.

App. W.D. 2015) (similarly reversing a decision on a claim barred by the doctrine of res

judicata). Additionally, we remand to the trial court for dismissal of Husband’s claim for

equitable relief. See id. at 596 (similarly remanding for dismissal of a claim barred by the

doctrine of res judicata). Wife’s first point on appeal and sub-part one of Wife’s second point on

appeal are granted.
 19
 III. CONCLUSION

 The trial court’s August 2019 judgment is reversed, and the case is remanded for further

proceedings consistent with this opinion.

 ROBERT M. CLAYTON III, Judge

Colleen Dolan, P.J., and
Mary K. Hoff, J., concur.

 20